IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMAL AKBAR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: 09-cv-1289 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| RICHARD DALEY, Individually and in ) | |
| his Official Capacity ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant's motion to dismiss Plaintiff's complaint [16] for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] For the reasons stated below, Defendant's motion [16] is granted.

**I.      Background[2]**

Pro se Plaintiff Jamal Akbar filed a complaint [10] against Defendant Richard J. Daley individually and in his official capacity as the "Chief Administrator Officer for the City of

---

[1] Plaintiff filed four documents [19, 21, 23, 25] in response to Defendant's motion to dismiss. The first two documents that Plaintiff filed [19, 21] are titled "Plaintiff's Reply to Motion to Dismiss and Motion for Summary Judgment with Memorandum of Law." They are identical in substance and respond to Defendant's motion to dismiss. Only the latter of the two [21] appears on the docket as a motion. The last two documents that Plaintiff filed are titled "Motion in Support of Plaintiff's Motion to Dismiss and Motion for Summary Judgment" [23] and "Motion to Support Motion for Dismissal and Motion for Summary Judgment in Response to Defendant's Motion to Dismiss" [25]. Although Plaintiff has filed three documents [21, 23, 25] that are styled as "motions for summary judgment," none complies with the local rules for filing a motion for summary judgment. The first of those "motions" is in substance a response to Defendant's motion to dismiss; the last two essentially are supplemental briefs in opposition to Defendant's motion. The Court has considered all of the arguments advanced in Plaintiffs' submissions, but strikes the "motions" [21, 23, 25] for failure to comply with the local rules and as moot.

[2] At this stage of the case, the Court assumes as true all well-pleaded allegations set forth in the complaint. See, e.g., *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

Chicago." Plaintiff alleges that the City of Chicago's red light camera program, which uses electronic monitoring devices and photographic equipment to detect and record images of vehicles entering an intersection against a red light (see Chicago Mun. Code § 9-102-010), violates the Equal Protection Clauses of the United States and Illinois Constitutions. Specifically, Plaintiff contends that the cameras were "strategically placed throughout the City of Chicago, with the clear exception of the central business loop area/downtown Chicago." Plaintiff submits that the central business loop area/downtown ("Downtown") is "exclusively segregated from these lights being equally and proportionally placed, as they are in other parts of the city." He continues that "[m]eeting the revenue needs of the City should not just be saddle on the backs of other communities and Downtown Chicago remains segregated and protected from these lights"; that "[o]ur wealthy counterparts Downtown Chicago can't be above the law"; and that "traffic aids [working Downtown] write tickets at their discretion * * * but on the weekends when the traffic aids are home, the Red Light Cameras that has been routinely and discriminatively placed are pulling in revenue 24-7."

## II.     Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief

above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Svcs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 127 S. Ct. at 1965, 1973 n.14). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005). In addition, the Court construes *pro se* complaints liberally and holds them to a less stringent standard than formal pleadings drafted by lawyers. See *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citations omitted).

**III.    Analysis**

    **A.    Standing**

As a threshold matter, Defendant contends that Plaintiff failed to allege a cognizable injury caused by the red light camera program in his complaint and therefore lacks standing to bring an equal protection challenge. At minimum, three elements must be shown to establish standing: (1) plaintiff must have suffered an "injury-in-fact," which is defined as an invasion of a legally protected interest, which affects the plaintiff personally and which has actually occurred or is imminent; (2) a causal relationship must exist between the injury and the complained-of conduct; and (3) there must be a likelihood, as opposed to mere speculation, that the injury will be redressed by a favorable decision by the Court. See, *e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *DH2, Inc. v. U.S. S.E.C.*, 422 F.3d 591, 596 (7th Cir. 2005) (citations omitted). General factual allegations of injury stemming from the defendant's conduct are sufficient at the pleading stage. *Lujan,* 504 U.S. at 561.

3

Defendant correctly notes in his motion to dismiss that Plaintiff's complaint does not allege that the red light camera program violates any legally-protected interest to which he is entitled, nor does the complaint even allege that Plaintiff had received a ticket as a result of the City's implementation of the program. Nor did Plaintiff suggest that there is any causal relationship between the automated red light camera program and any injury that he has suffered. If the Court were to consider only the allegations in Plaintiff's complaint, it would agree with Defendant that Plaintiff lacks standing. Nowhere in his complaint did Plaintiff allege, "that he actually received any automated red light tickets * * * when and where any such tickets were received * * * [or] the disposition of any such tickets," and thus Plaintiff's complaint is devoid of allegations of an injury that would confer standing. See, *e.g.*, *Lujan*, 504 U.S. at 560. However, Plaintiff's response to the motion to dismiss includes an exhibit indicating that Plaintiff received a ticket for a "Red Light Violation" on August 30, 2008. Plaintiff challenged that ticket and the Department of Administrative Hearings denied the challenge on January 13, 2009.

Defendant makes both a factual and legal argument that attaching the ticket in a response to a motion to dismiss is insufficient to confer standing. Defendant contends that the attached document does not even indicate that the ticket was issued from a red light camera, arguing that the "red light violation" may in fact have resulted from a routine traffic stop. Although the August 30 incident is not mentioned in Plaintiff's complaint or his response to the motion to dismiss, the Court notes that the rules of procedure are relaxed for *pro se* plaintiffs. In keeping with the Court's responsibility to construe Plaintiff's complaint liberally, and to hold it to a less stringent standard (see *Bridges*, 557 F.3d at 546), the Court will assume for purposes of deciding Defendant's motion to dismiss that Plaintiff's ticket was issued by a red light camera. Defendant also argues that as a general rule, deficient pleadings may not be remedied by briefs in

opposition to a motion to dismiss. See, *e.g.*, *Thompson v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989). However, Plaintiff is not seeking to amend his complaint, but rather to elaborate on the allegations in his initial pleading. He still maintains the same equal protection challenge.

A better argument for Defendant might have been claim preclusion. It appears from a document attached to the complaint that Plaintiff failed to raise an equal protection challenge to his red light ticket at his administrative hearing. The attached document states that "[a]s a defense to this ticket you have asserted that you were not in violation of any parking or compliance ordinance at the time the violation was issued." The Seventh Circuit twice has noted in challenges to City of Chicago ordinances, including one to the red light camera program, that claim preclusion may bar any subsequent constitutional challenge in federal court. See *Idris v. City of Chicago*, 552 F.3d 564, 565 (7th Cir. 2009) ("Because all plaintiffs had an opportunity to present their contentions in the administrative process, and then to state court, the City might well have had a good argument that claim preclusion bars this litigation. Litigants can't reserve federal issues for a federal court"); *Schor v. City of Chicago*, --- F.3d ---, 2009 WL 2461392, at *2 (7th Cir. Aug. 9, 2009). Yet in both instances, the court concluded that the City defendants had waived the claim preclusion argument and therefore the Court addressed the substance of the claims. This Court takes the same approach.

B.     **Equal protection**

Assuming that Plaintiff has the requisite standing to bring his equal protection claim, that claim nevertheless must be dismissed for failure to state a claim. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that he or she was (1) deprived of a federal right, privilege, or immunity (2) by any person acting under color of state law. See *Brown v. Budz*, 398 F.3d 904, 908 (7th Cir. 2005) (citations omitted). Plaintiff adequately has alleged that Defendant acted

under color of state law: he challenges Defendant's "methods of implementation of the Red light Camera System." The question is whether he has sufficiently alleged a deprivation of a federal right – specifically, a violation of his right to equal protection of the law. The Equal Protection Clause provides that "[no state shall] deny to any person within its jurisdiction the equal protection of the laws." U.S. Constitution, Amendment XIV, § 1.[3] It grants to all citizens "the right to be free from invidious discrimination in statutory classifications and other governmental activity" (*Harris v. McRae*, 448 U.S. 297, 322 (1980)) and requires that all similarly situated persons be treated in a similar manner" (*City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985)).

Because Plaintiff has challenged the "methods of implementation" of the red light program, the Court construes Plaintiff's claim as an "as applied" challenge to the ordinance. As an initial matter, it is unclear what classification Plaintiff believes Defendant created through the implementation of the red light camera program. The crux of Plaintiff's claim is that because no automated red light cameras exist in the downtown area, fewer tickets are issued in that area compared to the areas in which the red light cameras are located. The purported classification would appear to be: (i) individuals who drive in the downtown area and (ii) others who drive in the City but beyond the downtown limits. According to Plaintiff, those in the latter group are being treated differently because they are subject to potential red light violations twenty-four hours a day, even in the absence of police officers on the scene. That classification is

---

[3] Plaintiff also may be raising an Equal Protection challenge under the Illinois Constitution, which contains nearly identical language as the federal Constitution. Article I, Section 2 of the state Constitution states that "[n]o person shall be * * * denied equal protection of the law." Illinois Constitution, Art. I, § 2. Courts consistently have held that federal and Illinois equal protection claims are co-extensive and evaluated under the same standard. See *C.L.U.B. v. City of Chicago*, 157 F. Supp. 2d 903, 910 n.4 (N.D. Ill. 2001) (citing *Nevitt v Langfelder*, 157 Ill.2d 116, 124 (1993)).

problematic because the constituent members of the two groups constantly are in flux. Equal protection challenges to government classifications generally are concerned with distinctions based on an "identifiable group." See *Enquist v. Oregon Dep't of Agric.*, 128 S. Ct. 2146, 2152 (2008) (citation omitted); see also *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 60 (1973) (Stewart, J., concurring) ("[T]he basic concern of the Equal Protection Clause is with state legislation whose purpose or effect is to create *discrete and objectively identifiable classes*") (emphasis added). Plaintiff's classification may be discrete and identifiable at one moment in time, but the members of the class would change from moment to moment. Although the locations of allegedly differential enforcement are static, the drivers who are affected (or not) change on a daily basis. One could easily transition from protected class to discriminated class by driving a few blocks. There is no identifiable group of people who drive exclusively in the downtown areas, nor is there a separate and distinct group whose driving is limited to the outskirts. Without an identifiable classification, the government is not drawing a distinction between groups of people and Plaintiff's claim could be dismissed for this reason alone.

In any event, assuming that Plaintiff has alleged a discernable basis for classification, the Court next must consider the scrutiny that it should impose on Defendant's implementation of the ordinance. Because there is no indication that the ordinance targets a suspect class,[4] or

---

[4] Plaintiff alleges that, with the exception of Downtown, the red light cameras exist all over the City. There is no suggestion that they were placed in certain neighborhoods with a distinct racial character or areas heavily populated with individuals of similar national origin. To the extent that Plaintiff contends that the implementation classifies groups by wealth, the Court still would review under the "rational basis" standard under the present facts. See *San Antonio Indep. Sch. Dist.*, 411 U.S. at 22-24 (noting that a higher level of scrutiny may only be applicable if (1) lack of personal resources resulted in absolute deprivation of a desired benefit and (2) plaintiff needs to make an effort to demonstrate that the law operates to the peculiar disadvantage of a class fairly definable as indigent); *Dotson v. Shalala*, 1 F.3d 571, 580 (7th Cir. 1993).

addresses a fundamental right[5] the Court will evaluate the ordinance under the rational basis standard. See *Smith v. City of Chicago*, 457 F.3d 643, 650 (7th Cir. 2006) (citations omitted).

"The rational basis test is a deferential form of review that prevents courts from interfering too much with the work of legislatures." *Idris v. City of Chicago*, 2008 WL 182248, at *4 (N.D. Ill. Jan. 16, 2008), *aff'd*, 552 F.3d 564 (7th Cir. 2009). Under that test, an ordinance is presumed to be valid and will be sustained if the classification drawn is rationally related to a legitimate state interest. *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 637-638 (7th Cir. 2007) (citation omitted). When applying this standard, courts presume the constitutionality of the government's classification and it will not be set aside if any state of facts reasonably may be conceived to justify it. See *Wroblewski v. City of Washburn*, 965 F.2d 452, 459 (7th Cir. 1992). "To overcome the presumption of rationality, then, a plaintiff must establish that 'the facts on which the legislature may have relied in shaping the classification could not reasonably be conceived to be true by the governmental decisionmaker.'" *Id*. (quoting *Sutker v. Illinois Dental Society*, 808 F.2d 632, 635 (7th Cir. 1986)). Correspondingly, "a party may defend a statutory classification subject to the rational basis test without any 'quantum of evidence,' and the defense may be based upon any 'sound reason for the legislation.'" *Idris*, 2008 WL 182248, at *4.

The Seventh Circuit has addressed the "perplexing situation" that occurs when the rational basis standard (which is deferential to the defendant) intersects with the motion to dismiss standard under Rule 12(b)(6) (which is comparably deferential to the plaintiff). See *Wroblewski*, 965 F.2d at 459-460. "To survive a motion to dismiss for failure to state a claim, a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to

---

[5] Plaintiff cannot be suggesting that running red lights is a fundamental right.

governmental classifications." *Id.* at 460; see also *Univ. Prof'ls of Illinois v. Edgar*, 114 F.3d 665, 668 (7th Cir. 1997) (upholding dismissal of an equal protection challenge to legislation at the motion to dismiss stage).

Applying that guidance, Plaintiff's claim must be dismissed. Defendant states that the red light cameras were introduced to "promote and enforce compliance with traffic regulations and to help combat an increasing number of accidents and fatal motor crashes at traffic signals."[6] Focusing on Plaintiff's challenge to the implementation of that program, Defendant states that it takes into account "the frequency and seriousness of vehicle crashes, the frequency of red light violations, intersection design, and cost in choosing where to locate the red light cameras." Public safety at a reasonable cost is a legitimate state interest, and choosing the intersections that previously incurred the most violations and accidents is a rational means of advancing those interests. See *Nat'l Paint & Coating Ass'n v. City of Chicago*, 45 F.3d 1124, 1128 (7th Cir. 1995) (citation omitted) (observing that the contention that fines and other punishments deter misconduct is a rational belief backed up by a significant body of evidence). If the high priority intersections are not located in the downtown area, then the decision not to place cameras in that area does not raise any constitutional problems. See, *e.g.*, *Cruz v. Town of Cicero, Ill.*, 1999 WL 560989, at *12 (N.D. Ill. July 28, 1999) ("Many actions resulting in unequal enforcement are wholly unrelated to the kind that are actionable under equal protection law. The failure to enforce against all may be random, or may result from lack of resources, or an effort by the

---

[6] Although by no means necessary to sustain the ordinance under an equal protection attack, Defendant notes that the program has been successful by reducing accidents and red light violations at intersections with cameras.

authorities to get the most 'bang for their buck' by concentrating on the most notable lawbreakers.") (citing *Esmail v. Macrane*, 53 F.3d 176, 178 (7th Cir. 1995)).

"The burden is on the one challenging [an ordinance] to negate 'every conceivable basis which might support it,' regardless of whether the basis has any foundation in the record." *Bervid v. Alvarez*, --- F.Supp.2d ---, 2009 WL 2602450, at *6 (N.D. Ill. Aug. 20, 2009) (citing *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993)); *Smith*, 457 F.3d at 652 (noting that the same standard applies whether the plaintiff is challenging a statute on its face or as applied). Plaintiff does not even attempt to argue that the placement of red light cameras is not rationally related to some legitimate state purpose or that no set of facts reasonably could be conceived to establish a rational basis for the choice of intersections. See *Flying J Inc. v. City of New Haven*, 549 F.3d 538, (7th Cir. 2008) (affirming the district court's motion to dismiss on a rational basis standard in which it was able to hypothesize several reasons for the ordinance); *St. John's United Church of Christ*, 502 F.3d at 639 (affirming the district court's dismissal for same reason); *Brett, N. v. Community Unit School Dist. No. 303,* 2009 WL 424546, at *4 (N.D. Ill. Feb. 18, 2009) (dismissing an equal protection challenge because plaintiff had not negated the rationality of the policy or demonstrated that it was wholly unrelated to any legitimate state objective). Because Defendant has presented possible reasons that would justify the classification and Plaintiff has failed to "allege facts sufficient to overcome the presumption of rationality" (see *Wroblewski*, 965 F.2d at 460), Plaintiff's equal protection challenge must fail.

### C. Selective Enforcement

Defendant also discusses Plaintiff's equal protection argument as if he were raising a selective enforcement claim. See*, e.g., United States v. Armstrong*, 517 U.S. 456, 464 (1996). To the extent that this is a correct construction of Plaintiff's claim, it must be dismissed for

10

similar reasons. In order to set forth a valid selective enforcement claim, Plaintiff must meet the "ordinary equal protection standards that *Armstrong* outlines for selective prosecution claims." *United States v. Barlow*, 310 F.3d 1007, 1010 (7th Cir. 2002). *Armstrong* states that a selective prosecution claim is actionable as a violation of equal protection only if the decision to prosecute is based upon "an unjustifiable standard such as race, religion, or other arbitrary classification." *Armstrong*, 517 U.S. at 464 (citation omitted). A plaintiff may demonstrate that the law is "directed so exclusively against a particular class of persons * * * with a mind so unequal and oppressive that the system of prosecution amounts to a practical denial of equal protection of the law." *Id.* (citations omitted).

Any such claim again founders on Plaintiff's inability to identify a discrete class of persons at all, much less one as to which the Equal Protection Clause is concerned. Plaintiff's conclusory assertion that the placement of cameras strictly outside the downtown area was "arbitrary" is insufficient in light of Defendant's entirely rational reasons for deploying cameras in certain intersections but not others. "As long as a law or regulation is rationally based, the mere failure of those who administer it to treat all persons who have violated it with complete equality does not of itself infringe the constitutional principle of equal protection." *Christian v. Village of Maywood*, 656 F. Supp. 367, 368 (N.D. Ill. 1987) (citation omitted). "Selective, incomplete enforcement of the law is the norm in this country." *Hameetman v. City of Chicago*, 776 F.2d 636, 641 (7th Cir. 1985); see also *Dandridge v. Williams*, 397 U.S. 471, 485 (1970) (citation omitted) (noting that a classification does not violate the Equal Protection Clause simply because it "is not made with mathematical nicety or because in practice it results in some inequity").

In short, no suspect class or fundamental rights are targeted by the placement of cameras throughout the City. Any individual, regardless of race, national origin, or any other classification is a potential target of this ordinance. As such, Defendant's choice of intersections will be upheld unless Plaintiff can negate "every conceivable basis which might support" those decisions, which he cannot. "When social or economic legislation is at issue, the Equal Protection Clause allows the States wide latitude, and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic process." *City of Cleburne*, 473 U.S. at 440.[7]

Because Plaintiff's Equal Protection argument would not succeed against any defendant, the Court need not discuss in any detail Plaintiff's arguments for imposing liability on the Mayor of Chicago. Suffice to say that the complaint is devoid of any allegations that Mayor Daley personally took any action that deprived Plaintiff of his constitutional rights. See *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1948 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

---

[7] See Jason George and Graydon Megan, "Red light cameras in Schaumburg screech to a halt," <u>Chicago Tribune</u> (July 15, 2009).

**IV. Conclusion**

For the reasons stated above, Defendant's motion to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) [16] is granted.[8]

Dated September 18, 2009

_____
Robert M. Dow, Jr.
United States District Judge

---

[8] In addition, as noted above, Plaintiff's motions for summary judgment [21, 23, 25] – which in substance are briefs in opposition to Defendant's motion – are stricken for failure to comply with this District's local rules and as moot.